UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS JIMENEZ, individually and on
behalf of Brazil Ethanol, Inc.,

          Plaintiff,

      v.

BRAZIL ETHANOL, INC., et al.,

          Defendants.

11 Civ. 3635 (LBS)

**<u>MEMORANDUM
& ORDER</u>**

SAND, J.

       In this action, Plaintiff Carlos Jimenez ("Jimenez") asserts various state and federal claims against Brazil Ethanol, Inc. ("BEI"), a Delaware corporation with its principal place of business in New York, Global Capital Networks LLC ("GCL"), a Delaware limited liability company, and a host of other defendants including three Brazilian companies—JP2 Technologia & Finanças Ltda ("JP2"), Grupo EQM, Kelbe Participações Ltda—and a number of American and Brazilian nationals.

       Defendants BEI and GCL move to dismiss Jimenez's claims against them.  BEI also moves this court to disqualify Richard Pu, Jimenez's attorney.  For the following reasons, we grant BEI and GCL's motions to dismiss, and deny BEI's motion to disqualify Richard Pu.

**I.  Background**

       Jimenez was hired to advise GCL—itself an advisor to various petrochemical and biofuel companies—about potentially profitable acquisitions of energy-related companies in Asia and South America.  Second Amended Complaint ("SAC") ¶ 8–19.  In early 2007, around the same time that Jimenez was working for GCL in Brazil, GCL and Defendant Frederico Robalinho ("Robalinho"), formerly Brazil's Secretary of Commerce, incorporated BEI in Delaware for the

1

purpose of "acquir[ing] Brazilian companies involved in the production of ethanol and sugar, with a view to selling those commodities in the U.S."  SAC ¶ 20.  Jimenez was appointed BEI's Managing Director of Strategy and Acquisitions and was made a director of the board.  SAC ¶ 23.  Jimenez also claims that Jorge Cantonnet ("Cantonnet"), GCL's president, promised Jimenez that he and Jimenez would, eventually, "share equally in the [*sic*] whatever shares were issued to Cantonnet."  SAC ¶ 21.

The essence of Jimenez's complaint centers on an alleged scheme to defraud BEI's investors that was concocted by BEI, Robalinho, Cantonnet, and the remaining Defendants. According to Jimenez, the scheme "consisted of paying JP2 millions of dollars in commissions for purportedly identifying acquisition targets," even though JP2 had done no such work.  JP2 would then pay kickbacks to Defendants.  SAC ¶ 24.  Though Jimenez was on BEI's board and himself responsible for managing BEI's acquisitions, Jimenez claims that he knew nothing of the scheme.  SAC ¶¶ 26a, 29e.

After reneging on the alleged agreement to share in BEI's shares equally, Cantonnet eventually offered to sell Jimenez 20% of GLC's shares.  SAC ¶¶ 33–42.  In purchasing the shares, Jimenez purports to have relied on a prospectus that, by concealing the alleged fraud, was replete with material omissions and misrepresentations.  SAC ¶ 31, 37.  Specifically, Jimenez claims that the prospectus failed to disclose, *inter alia*, that BEI had entered into a brokerage agreement with JP2, the nature of the fraudulent scheme, and that members of BEI's board would be receiving consulting fees.  SAC ¶ 31.  Jimenez claims that he was harmed when BEI engaged in a number of negligent transactions that together have led, or will lead, to BEI's liquidation and the total loss in value of Jimenez's shares.  SAC ¶¶ 43–71.

Jimenez alleges, among other things, that Defendants' behavior violated SEC Rule 10b-5, amounted to common law fraud, and resulted in Defendants' unjust enrichment.  SAC ¶¶ 84–126.

## II.  Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).  "To survive dismissal, the plaintiff must provide the grounds upon which his claims rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'"  *ATSI Commc'ns Inc. v. The Shar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, the plaintiff's complaint must include "enough facts to state a claim of relief that is plausible on its face."  *Id.* at 1940 (citing *Twombly*, 550 U.S. at 570).  Plausibility, in turn, requires that the allegations in the complaint "raise a reasonable expectation that discovery will reveal evidence" in support of the claim.  *Twombly*, 550 U.S. at 556.

Allegations of fraud must, however, meet the heightened pleading standard of Rule 9(b), which requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir 1994).  "[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory

allegations.  An ample factual basis must be supplied to support the charges." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations omitted).  As such, "plaintiffs [must] allege facts that give rise to a strong inference of fraudulent intent," *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993), which may be shown by "alleging facts to show … motive and opportunity [or] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128 (2d Cir. 1994).

On a motion to dismiss, a court is not limited to the four corners of the complaint.  A court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## III.  Discussion

### a.  Attorney Pu's Standing

Richard Pu ("Pu"), Plaintiff's attorney, is currently suspended from the practice of law in New York State.  *See In re Pu*, 826 N.Y.S.2d 43, 48–49 (N.Y. App. Div. 2006).  By an order issued by the Committee on Grievances of the Southern District of New York, Pu, also previously suspended from the practice of law in this court, was reinstated.  *In re Pu*, No. M-2-238 (S.D.N.Y. Dec. 12, 2006).  Based on these facts, BEI moves to disqualify Pu, arguing that despite being in good standing in the Southern District, Pu's suspension in New York means that "[Pu is not permitted to act generally or to independently represent clients in this District." BEI's Reply Brief at 11.  We disagree.

This case is governed by *Sperry v. Florida*, which prohibits a "State's licensing board [to have] a virtual power of review over [a] federal determination."  373 U.S. 379, 385 (1963).  It is

4

well-settled that "[t]he two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom … lawyers are included." *Theard v. United States*, 354 U.S. 278, 281 (1957).  Were it otherwise—were it such that an attorney's license to practice in federal courts could be conditioned on the presence or absence of his or her state license—the effect would be to strip federal courts of their "inherent authority" to decide who can appear before them.  *See In re Snyder*, 472 U.S. 634, 643 (1985).  Indeed, addressing facts analogous to those before us, the Second Circuit concluded that "[a]lthough an attorney must be admitted to a state bar in order to be admitted to the Southern District bar … the subsequent revocation of the state bar membership does not automatically disqualify an attorney from the continued practice of law in the district court."  *In re Gouiran*, 58 F.3d 54, 57 (2d Cir. 1995).  Pu was suspended by this court and was reinstated by this court. Insofar as he is in good standing as a member of the bar of the Southern District of New York, then his standing vis-à-vis the courts of the State of New York is irrelevant.  BEI's motion to disqualify Pu is denied.

### b. 10(b)(5) Claim

To succeed on an SEC Rule 10b-5 claim, a "plaintiff must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."  *Lawrence v. Cohn*, 325 F.3d 141, 147 (2d Cir. 2003) (quotation marks and citation omitted).

The gravamen of Jimenez's 10b-5 complaint is that he detrimentally relied on material omissions and misrepresentations in BEI's offering materials.  Based on Jimenez's own recitation of the facts in the SAC, Defendants allegedly "caused BEI to circulate a prospectus …

that both omitted to state material facts and misrepresented facts." SAC ¶ 31. Defendants circulated the prospectus on March 20, 2007. SAC ¶ 31. But here Jimenez runs into a problem, for he admits that he bought his shares on March 16, 2007, four days *before* the prospectus was circulated. SAC ¶ 38. One cannot as a matter of law—let alone logic—rely on something that does not exist. *See, e.g.*, *Zucker v. Sasaki*, 963 F. Supp. 301, 307 n.6 (S.D.N.Y. 1997) ("It is impossible to establish reliance, an essential element of actions pursuant to 10(b) and Rule 10b-5, on statements which were issued after the purchase of the stock."). Here, the sale of the shares to Jimenez was memorialized in the very prospectus that Jimenez claims deceived him into purchasing those shares. Dans Decl. Ex. A, at 52. Jimenez's 10b-5 claim fails on its facts.

Faced with this logical impasse, Jimenez urges this court to take judicial notice that Jimenez, then BEI's Managing Director of Strategy and Acquisitions and a member of BEI's board, would have read the prospectus before it was published—that, in other words, "its contents would have been known to an insider like Jimenez weeks, if not months, before his … purchase." Plaintiff's Reply Brief at 10. But this cuts both ways. If "an insider like Jimenez" was aware of the contents of the prospectus far in advance of his purchase, we find it extremely unlikely that he—and he alone—did not know of the alleged fraud. All the more so when the alleged fraud involved a kickback scheme focused on spurious acquisitions, the precise area of Jimenez's expertise in BEI. Indeed, Jimenez acknowledges this quandary when he writes that "[i]n the normal course, the person in charge of acquisition would have know [*sic*] about a role played by a business broker in identifying a target." SAC ¶ 29e. Yet, crucially, Jimenez provides no explanation whatsoever as to why he was, or plausibly could have been, uninformed.

While not directly on point, the so-called "group pleading doctrine" is instructive. It is now well-established that "statements in *prospectuses*, registration statements, annual reports,

press releases, or other group-published information, are the collective work of those individuals with direct involvement in the everyday business of the company, [which] allows plaintiffs … to circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of fraudulent intent." *In re NTL, Inc. Sec. Litig.*, 347 F.Supp.2d 15, 22, n.26 (S.D.N.Y. 2004) (internal quotations and citations omitted) (emphasis supplied).  If, hypothetically, Jimenez were not the plaintiff but rather a defendant in this action, then as an insider involved in BEI's day-to-day business Jimenez would be presumed, albeit for pleading purposes only, to have knowledge of the alleged fraud in the prospectus.

Without more facts suggesting otherwise—facts that Jimenez does not plead—we are simply not persuaded that Jimenez, who for so long knew about the contents of the prospectus and actively participated in BEI's business, was unaware of what he alleges was a multi-million dollar kickback scheme.  Plaintiff Jimenez's 10b-5 claim is dismissed with prejudice.

### c. State Law Claims

Jimenez also asserts a host of state causes of action, including unjust enrichment, common law fraud, and breach of fiduciary duty.  We decline to exercise supplemental jurisdiction over his state law claims—a discretionary decision within the power of the district court.  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d. Cir 2004).  In a case like this, where "all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Jimenez's state law claims are dismissed without prejudice.

### III.  Conclusion

For the foregoing reasons, Jimenez's federal claim is dismissed with prejudice, while his state claims are dismissed without prejudice.[*]

SO ORDERED.

November 29, 2011
New York, N.Y.

_____
U.S.D.J.

---

[*] This Court has considered all of the parties' other arguments and found them to be moot or without merit.